Sneed, J.,
delivered tbe opinion of the court:
Tbe plaintiffs brought this action of-ejectment to recover two tracts of land granted by tbe State of Tennessee to the president and trustees of the University of North Carolina, both grants bearing date 23d Nov., 1827, and each founded upon entries dated Dec. 16, 1822. The defendants claim under a 4,000 acre grant to Frederick Miller by the State of North Carolina of date July 10, 1788. The case was tried in the circuit court of Obion county, resulting in a verdict and judgment for defendants. Tbe question mainly controverted before tbe jury was as to locus in quo of the 4,000 acre grant to Miller, under which the defendants claim. There was much proof and many circumstances tending to sustain both the theory of the plaintiffs and the defendants as to the locality of the Miller grant, and after a careful consideration of the testimony, we are brought to tbe conclusion that, however the jury might have found the fact under the proof, we could not have disturbed their verdict upon any well settled rules. Certain errors of law in the rulings and in the charge of his Honor the circuit judge have been assigned by the plaintiffs which it becomes our duty to consider. The theory of the plaintiffs is that, the Ferdinand Miller grant, as originally located, covered a .considerable portion of the area of *630 land subsequently submerged by the earthquakes of 1811 and 1812 in the waters of Reelf oot Lake, and that it was an afterthought in the defendants who claim under that grant, to insist upon the locality in which the plaintiffs’ grants are located.
The plaintiffs insist also that if mistaken in this, that those under whom the defendants claim, the owners of the Miller grant, before the university entiles were made, or at-least before they were surveyed, caused said 4,00(bacre tract to he surveyed and remarked at another place, and the surveys of the university entries, and divers others in the -vicinity, were made in conformity and in deference to such remarking, and that the owners of the Miller grant are estopped to claim what they now claim as the original locality' of their grant to the' prejudice of the plaintiffs. There is some proof adduced by the'plaintiffs’ténding to show this remarking, and that the line; and locality thus established was long recognized and acquiesced in by the owners of the' Miller grant, and by'contiguous proprietors, and that' the university was thus misled in appropriating tlio lands now' claimed by the plaintiffs. The circuit judge, after stating the general doctrines of the law of estoppel, thus charged the jury: “If the owners of the Miller grant employed’Rutherford to establish'the boundaries of their land and he afterwards, in good faith marked, or remarked the land in reasonable conformity to the calls of the grant, and they acted -upon or accepted the lines thus established, then the owners -of the Miller land could not afterwards change the boundaries thus made, even if there was a mistake, to the injury of subsequent entarers of adjacent lands made in reference to the boundaries of the Miller grant land as established by Rutherford.” And His Honor continues: “To make an act in pais estop a party as to recognition of an illegally run line as the boundary, the act of recognition must be shown to have been done knowingly and deliberately, not hastily or unadvisedly.” In this por *631 tion of the charge as applied to the facts of this case, we think His Honor erred, especially in view of the fact that it does not appear that the original grantee was ever upon the land, or ever saw the same. The charge ignores the doctrine of the law as applicable to the relation of the principal and agent, and contravenes the principles am nounced by this court when the case was before ns at a former term. Hpon the former trial the plaintiffs asked the court to charge the jury “that -if the owner of the Miller grant employed Rutherford to establish the boundaries of the land, and he did fix or designate the lines, and they acted , .upon such lines, they could not change them afterwards when others had acquired rights,” which the court refused to charge, but charged that.“if they employed Rutherford to establish the lines, and, they were not with. them, they would not. be bound if he made a mistake unless they afterwards knowingly recognized his acts.” . This, said the court, is clearly erroneous: What a party does bv Ins agent, he is as, much responsible for as. if he did it.himself, when the agent acts within the bounds of-his authority as agent. If he was employed to establish the lines, whatever he .did -bona fide on that subject bound the principals a much as when they had done the act themselves, when other persons had acted on it, upon the familiar principle that, where one of two innocent persons lose by the acts of a third person, he who enables said third person to occasion the loss must, sustain it.” It Avas upon this point and others not necessary to notice, that the judgment was reAmrsed in this court and a iicaa^ trial aAvarded. It is settled in many adjudicated cases in this state that if granted' land, not originally marked by the surveyor, or wdrere marks haAe become obliterated by time, be afterwards remarked by the OAvner of the Avhole or part in good faith; and in reasonable conformity with the calls of the patent, such private marking or remarking operates as an estoppel on the owner, the *632 state and subsequent grantees, precluding tbe owner from claiming land not included thereby. 'What marking or remarking is bona fide, or in reasonable conformity with the calls of the grant, are questions of fact, depending on the circumstances of each case. Riggs v. Parker’s Lessee, Meigs’ Rep., 43 [51]; Davis’ Lessee v. Smith et al., 1 Yer., 496; Singleton v. Whiteside, 5 Yerg., 39; 1 Meigs’ Dig., 154. In one of these cases it is said that the doctrine of es-toppel is that upon which remarking should be placed, the rule being then certian and fixed. 1 Yerg., 496. The error in the charge as applied to the facts of this case is in the assumption of His Honor that the act of recognition must be shown to have been done knowingly and deliberately— not hastily or unadvisedly. The estoppel grows out of the act of 'the agent done within the scope of his authority, and not disaffirmed by the principal before intervening rights have vested. The principal is bound by the acts of the agent, and if they have by a seeming recognition or acquiescence allonved others to acquire rights on the faith of the agent’s acts, then the estoppel is -complete, without regard to the fact whether the act of recognition was done knowingly and deliberately or hastily and unadvisedly. Under the doctrine of estoppel the. rights of the parties would be fixed by the agent’s remarking within the scope of his authority, and the intervention of other rights, founded upon it and in subordination to it. “Estoppels,” in the language of the authorities, “signify that a man, for the sain of good faith and fair dealing, should be estopped from saying that to be false which by his means has been accredited for the truth, when by his representations he has led others to act.” Harm. Law of Estoppel.
The remarking in this case was alleged to have been done about the year 18 — . In 1826, Cheatham and Crockett, two of three owners of the Miller grant, executed to Henry Rutherford a deed to a portion of said tract lying in the southeast corner of said grant. This deed re *633 cites tbe consideration] to be tiiat said Rutherford lias performed services to said bargainors in establishing the lines of said Miller grant, and, after stating the quantity of said land thus conveyed to Rutherford at 640 acres in all, recites the fact that 256 acres thereof is on dry land uncovered by the lake. It should be stated as a matter of fact that the Miller grant, as now claimed by defendants, was in no paid thereof covered by the waters of the lake, and that the Miller grant as claimed by plaintiff, and alleged to have been thus remarked, was for the most part thus submerged by the convulsions of 1811-12.
The plaintiff requested the court to charge the jury in reference to this deed that “recitations in the deeds are binding on the parties to the deeds as solemn admissions of the facts recited,'’ which the court declined, but charged that the recitations in the deeds were mere prima facie evidence of the facts recited'; that the parties might prove that they were mistaken. It is insisted by the plaintiffs that, in view of the facts in controversy and the facts recited in the deed, that this charge was error; that the charge took away the force of the fact recited in the deed by Crockett and Cheatham to Rutherford that they conveyed the land in consideration of services rendered by Rutherford in establishing the lines of the 4,000 acre Miller grant. .It is laid down as a fundamental principle that a recital or allegation in a deed or bond, which is certain in its terms and relevant to the matters in hand, is conclusive between the parties to the controversy growing out of the instrument itself or the transaction in which it was executed. Herm. Estoppel, 232. And when it can be collected from the deed that the parties to it have agreed upon a certain admitted state of facts as the basis on which they contract, che statement of those facts, though by way of recital estops the parties from proving the contrary. Id., 234. We are not prepared to hold that these principles embrace the character of recital embraced in the deed in question.
*634 It is a mere statement of a consideration which., though a strong circumstance to be considered, if unexplained, is not conclusive upon the parties themselves, and cannot be held to be so as to their privies in estate.
We think there was no error in the charge- on this point, but for the error indicated the judgment will be reversed.